IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEROME L. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 13-1659 |
| | ) | |
| PNC FINANCIAL SERVICES GROUP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CONTI, Chief District Judge.

**I. INTRODUCTION**

Pending before the court is the November 13, 2014, motion for summary judgment (ECF No. 30) filed by PNC Bank, National Association[1] ("PNC" or "defendant"), pursuant to Federal Rule of Civil Procedure 56. Defendant seeks judgment as a matter of law with respect to the November 26, 2013, complaint (ECF No. 2) filed *pro se* by Jerome L. Moore ("plaintiff"). Plaintiff asserts a claim of race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). This court exercises subject-matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). For the reasons that follow, defendant's motion for summary judgment will be GRANTED.

---

[1] PNC Bank, National Association, is misidentified in Jerome L. Moore's November 26, 2013, complaint as PNC Financial Services Group. (ECF No. 7 at 1).

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

On October 12, 2005, defendant hired plaintiff for the position of Financial Services Consultant. (ECF No. 32 at 1). In May 2008, plaintiff was moved to PNC's Commercial Loan Servicing Center, where he was initially employed in the position of Processor. (ECF No. 32 at 1 – 2). By June 2008, plaintiff assumed the position of Senior Loan Support Specialist. (ECF No. 32 at 2). In this most recent position, plaintiff's responsibilities included reviewing commercial loan documents, processing loans and payments, and making loan adjustments on customer accounts. (ECF No. 32 at 2).

Plaintiff had also been trained to be conversant in defendant's Fidelity Bonding Policy, and Code of Business Conduct and Ethics. (ECF No. 32 at 3). The Fidelity Bonding Policy could be violated by the commission of dishonest acts, such as falsification of timesheets. (ECF No. 32 at 3). The failure to maintain accurate timesheets would likewise be a violation of the Code of Business Conduct and Ethics. (ECF No. 32 at 3).

From September 2010 through March 2012, plaintiff was supervised by Beth Foltin, a Caucasian female. (ECF No. 32 at 2). From March 5, 2012, onward, plaintiff was supervised by Kimberly Bauer, also a Caucasian female. (ECF No. 32 at 2). Ms. Foltin began noting plaintiff was regularly tardy for work in January 2011. (ECF No. 32 at 4). After seeking advice from defendant's Employee Relations Information Center, Ms. Foltin met with plaintiff to address the issue. (ECF No. 32 at 4). Plaintiff denied being tardy for work, however, and asserted that other employees in his department were regularly late to work. (ECF No. 32 at 8 – 9). Nevertheless, plaintiff was required to email Ms. Foltin each morning when he reported to work. (ECF No. 32 at 4). Prior to her departure, Ms. Foltin informed Ms. Bauer about plaintiff being required to

send the email, and Ms. Bauer adopted the practice after witnessing plaintiff's tardiness herself in April 2012. (ECF No. 32 at 4).

Between November 2010 and May 2012, plaintiff had been using a wall clock in his office area to record his arrival times on his timesheets. (ECF No. 32 at 6 – 7). It was defendant's policy that the clocks on employees' work computers be used for this purpose for the sake of consistency. (ECF No. 32 at 2, 6 – 7). Plaintiff did not adhere to this practice due to alleged computer issues. (ECF No. 32 at 6 – 7).

On May 16, 2012, plaintiff was called to a meeting with Ms. Bauer and Employee Relations Information Center representative Jodie Fine-Sheriff, a Caucasian female. (ECF No. 32 at 6). Ms. Fine-Sheriff produced documents indicating that plaintiff had been misreporting his arrival times on his timesheets. (ECF No. 32 at 5 – 6). Consequently, plaintiff was placed on paid administrative leave pending further investigation of plaintiff's potential misrepresentations on his timesheets. (ECF No. 32 at 7). On May 17, 2012, Ms. Fine-Sheriff contacted plaintiff to inform him that his employment was to be terminated, effective the following day. (ECF No. 32 at 7 – 8). Plaintiff was terminated on May 18, 2012. (ECF No. 32 at 7 – 8).

Plaintiff filed a complaint (ECF No. 2) in this court on November 26, 2013, claiming that he had been terminated by defendant because he was African American, in violation of Title VII. On January 30, 2104, Defendant filed its answer (ECF No. 7). Following the close of discovery, defendant filed a motion for summary judgment (ECF No. 30) and accompanying brief in support (ECF No. 31) on November 13, 2014. Plaintiff filed a motion for extension of time to respond (ECF No. 36) on December 15, 2014. On December 18, 2014, the court ordered that plaintiff submit his response by January 5, 2015. (ECF No. 39). The court also indicated that "[a]ny party failing to respond to a motion for summary judgment shall be deemed not to oppose

the motion." (ECF No. 39 at 2). Plaintiff never filed a response. Defendant filed a combined statement of material facts (ECF No. 40) on February 2, 2015, and requested that the court find plaintiff unopposed to the motion for summary judgment, and grant judgment as a matter of law in favor of defendant. The period for submitting responsive filings is now closed, and the matter is ripe for disposition.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if the record shows that there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. *Id.* at 248–49.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *Wishkin v. Potter*, 476 F. 3d 180, 184 (3d Cir.2007); *Doe v. Cnty. of Centre, Pa*, 242 F. 3d 437, 446 (3d Cir.2001); *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F. 3d 129, 130 (3d Cir.2001); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir.1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir.1998).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986). The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Liberty Lobby*, 477 U.S. at 248 – 49.

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. *Celotex*, 477 U.S. at 323; *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir.1996). The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir.2007) (citing *Celotex*, 477 U.S. at 325). A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more of those elements. *Celotex*, 477 U.S. at 322 – 23. Once the movant meets that burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. FED. R. CIV. P. 56(e); see *Liberty Lobby*, 477 U.S. at 247 – 48; *Celotex*, 477 U.S. at 323 – 25. If the evidence

the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. *Liberty Lobby*, 477 U.S. at 249.

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' " *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir.2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F. 3d 226, 233 (3d Cir.2002)).

In cases involving *pro se* litigants, the court must liberally construe submissions. *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 384 (W.D. Pa. 2007) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). Submissions are read to "raise the strongest arguments suggested therein." *Id.* (citing *Burgos v. Hopkins*, 14 F. 3d 787, 790 (2d Cir. 1994)). Yet, "a forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability." *Id.* Bald assertions unsubstantiated by record evidence will not defeat a well-supported motion for summary judgment. *Id.* (citing *Carey v. Crescenzi*, 923 F. 3d 18, 21 (2d Cir. 1991)).

### IV. DISCUSSION

As an initial matter, the court acknowledges defendant's notation of the December 18, 2014, order (ECF No. 39) stating that "[a]ny party failing to respond to a motion for summary judgment shall be deemed not to oppose the motion." However, the court must also

acknowledge that the failure of the nonmoving party to adequately respond to a motion for summary judgment does not relieve the movant of his or her burden of demonstrating entitlement to judgment as a matter of law. *Carley v. Wheeled Coach*, 991 F. 2d 1117, 1126 (3d Cir. 1993). When the nonmoving party bears the burden of proving the relevant issues, a district court must determine whether deficiencies in the nonmoving party's "evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assoc. v. V.I. Bd. of Tax Rev.*, 922 F. 2d 168, 175 (3d Cir. 1990). Judgment for the moving party must be "appropriate." *Id.* Due to plaintiff's failure to respond to defendant's motion for summary judgment, the court must accept all the factual statements in defendant's concise statement of material fact as undisputed.[2] Nonetheless, the court must still analyze the evidence of record in the light most favorable to plaintiff, and determine whether the evidence of record supports a finding that the defendant is entitled to judgment as a matter of law. *Id.*

In his complaint, plaintiff relied primarily upon a few key pieces of alleged fact. First, plaintiff noted that Ms. Foltin, Ms. Bauer, and Ms. Fine-Sheriff are all Caucasians. Second, he believed that other non-African-American employees under similar circumstances were treated more favorably that he. In particular, a Caucasian former co-worker, Britney Buchanan, was regularly tardy and frequently arrived to work intoxicated. (ECF No. 2 at 4 – 5). Plaintiff asserted that his supervisors were aware of such behavior and, yet, did not punish Ms. Buchanan. (ECF No. 2 at 4 – 5). Indeed, Ms. Buchanan continues to work for defendant. (ECF No. 2 at 4 – 5). With respect to the motion for summary judgment, Defendant notes, however, that there is no evidence presented which demonstrates that racial animus was a factor in plaintiff's termination. Plaintiff lost his job because his conduct violated defendant's Fidelity Bonding

---

[2] For purposes of summary judgment, defendant "accepts the facts in the light most favorable to Plaintiff and consistent with Plaintiff's deposition testimony." (ECF No. 32 at 1 n. 1).

7

Policy, and Code of Business Conduct and Ethics. Additionally, the circumstances of Ms. Buchanan's employment with defendant were not analogous to plaintiff's circumstances and, therefore, Ms. Buchanan is not a proper comparator.

In analyzing plaintiff's Title VII claim, the court notes that the burden shifting-framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Trent v. Test America, Inc.*, 559 F. App'x 180, 182 (3d Cir. 2014) (citing *Jones v. Sch. Dist. of Phila.*, 198 F. 3d 403, 410 (3d Cir. 1999)). Under that framework, plaintiff must establish a *prima facie* case of discrimination. *Jones*, 198 F. 3d at 410. If the requisite showing is made, defendant must respond by articulating a "legitimate, nondiscriminatory reason" for plaintiff's termination. *Id.* It is then incumbent upon plaintiff to demonstrate by a preponderance of the evidence that defendant's justification for terminating plaintiff was mere pretext. *Id.*

A *prima facie* case of race-based discrimination in violation of Title VII requires plaintiff to demonstrate by a preponderance of the evidence that: "(1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position that he sought to retain; (3) the plaintiff suffered an adverse employment action, e.g. termination of his employment; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination." *Green v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014). In establishing the fourth element, plaintiff may: "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Id*. (citing *Sarullo v. U.S. Postal Serv.*, 352 F. 3d 789, 797 n. 7 (3d Cir. 2003)).

Defendant does not dispute plaintiff's ability to satisfy the first three elements of his *prima facie* case. It is the fourth element with which defendant takes exception. Plaintiff's complaint concentrated on comparators in attempting to establish the fourth element. Specifically, he focused on defendant's treatment of his Caucasian former co-worker Ms. Buchanan. Plaintiff alleged that Ms. Buchanan regularly violated defendant's Code of Business Conduct and Ethics by reporting to work late, returning from breaks late, and working while intoxicated. (ECF No. 34-1 at 27 – 28, 61 – 65, 68 – 69). Plaintiff claimed that he and other co-workers made supervisors aware of Ms. Buchanan's behavior, but no disciplinary action was taken against her. (ECF No. 34-1 at 27 – 28, 61 – 65, 68 – 69). Plaintiff asserted that other co-workers were tardy, but did not recount the frequency of tardiness, or the racial demographic of his co-workers. (ECF No. 34-1 at 27 – 28, 61 – 65, 68 – 69). At the summary judgment stage, plaintiff cannot rely upon the allegations set forth in his complaint. *Celotex*, 477 U.S. at 322; *Corliss*, 247 F. App'x at 354. He did not respond to defendant's motion and did not adduce any evidence to support his claims. Specifically, plaintiff provided no evidence that any of his co-workers falsified documents or misrepresented their hours on their timesheets. He did not present evidence to confirm whether or not Ms. Buchanan was reprimanded for her conduct at work.

Given the above, the court is compelled to find that no reasonable jury could render a verdict in plaintiff's favor. Without evidence that there was a valid comparator, plaintiff's cannot prove the fourth element of his *prima facie* case by a preponderance of the evidence. To be considered a valid comparator, a co-worker need not be "'identically situated', but they must be similar in 'all relevant respects.'" *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 431 (W.D. Pa. 2014) (citing *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009)). Defendant presents evidence that Ms. Buchanan was verbally warned about her tardiness, and

she was required to send an email to her supervisors every morning when she checked in to work. Defendant's evidence demonstrates that there was no suspicion that Ms. Buchanan was falsifying timesheets. (ECF No. 32 at 9). Ms. Buchanan cannot, therefore, be considered a comparator for purposes of establishing the fourth element.

A comparator, for purposes of plaintiff's claim, could be a Caucasian employee, in a similar position, in the same department, and accused of falsifying timesheets, yet not terminated from employment. *Id.* (citing *Mandel v. M & Q Packaging Corp.*, 706 F. 3d 157, 170 (3d Cir. 2013)). Defendant provided evidence that three other PNC employees in a similar position to plaintiff were determined to have falsified timesheets. (ECF No. 32 at 8). The racial makeup of these employees was: one Caucasian, one African American, and one Asian American. (ECF No. 32 at 8). All three were terminated. (ECF No. 32 at 8). Plaintiff provided no evidence to the contrary. In light of the comparable seriousness of the conduct of these similarly situated employees, the evidence – even when all inferences are drawn in plaintiff's favor – refutes plaintiff's allegations in his complaint. *Id.* (citing *Nguyen v. AK Steel Corp.*, 735 F. Supp. 2d 346, 361 (W.D. Pa. 2010)). Plaintiff failed to adduce evidence about the existence of preferentially treated comparators and, as such, cannot establish the fourth element of his *prima facie* case.

Incidentally, even if plaintiff had established a *prima facie* case, he cannot demonstrate pretext based upon the evidence of record. Defendant adduced sufficient evidence of a legitimate, nondiscriminatory reason for plaintiff's termination: his regular tardiness followed by a failure to properly record the hours he worked on his timesheets. In his complaint, plaintiff blamed his inability to record properly his time by claiming his computer's clock malfunctioned and forced him to rely upon a wall clock in his office that was several minutes behind. In order

to rebut defendant's claims as pretext, plaintiff must provide evidence "that would allow a fact finder reasonably to "'(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action.'" *Sarullo*, 352 F. 3d at 800 (quoting *Jones*, 198 F. 3d at 413). Plaintiff may make such a showing by demonstrating that a defendant's "proffered reasons are weak, incoherent, implausible or so inconsistent that 'a reasonable factfinder could rationally find them unworthy of credence.'" *Id.* (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 f. 3d 1101, 1108 – 09 (3d Cir. 1997)). He or she can also meet their burden with evidence that "the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it could not have been the employer's real reason.'" *Id.* (quoting *Jones*, 198 F. 3d at 413).

Plaintiff alleged that a malfunctioning computer and inaccurate wall clock caused the inaccuracies. Defendant, however, adduced evidence that on ten occasions between April 23, 2012, and May 11, 2012, plaintiff's access card records showed that he entered his department after his scheduled start time. (ECF No. 32 at 5 – 6). On those days, plaintiff entered start times that were before he entered his department. (ECF No. 32 at 5 – 6). On four of these occasions, he recorded start times that were ten minutes before access card records indicated he had entered his department. (ECF No. 32 at 5 – 6). With respect to plaintiff's claims that his computer clock was not functioning, the call log at defendant's IT Help Desk showed that plaintiff only asked for help once in June 2011, and again in May 2012, and only because he was locked out of his computer. (ECF No. 32 at 7). Even viewing the evidence in the light most favorable to plaintiff, no reasonable factfinder could rationally conclude that defendant's reason for terminating plaintiff was unworthy of credence. There is certainly no evidence adduced to

suggest any sort of racial animus on the part of defendant. Simply noting that plaintiff's race was different from his supervisors is insufficient.

## V. CONCLUSION

Based upon the foregoing, plaintiff failed to adduce sufficient evidence to establish a *prima face* case of race-based discrimination in violation of Title VII, or to show that defendant's proffered legitimate, nondiscriminatory reason for plaintiff's termination was mere pretext. Accordingly, defendant's motion for summary judgment (ECF No. 30) is granted.

An appropriate order will be entered.

<u>s/ Joy Flowers Conti</u>
Joy Flowers Conti
Chief United States District Judge

Dated: August 21, 2015
cc/ecf: All counsel of record